UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LEE GLOSSON,<br><br>    Plaintiff,<br><br>  v.<br><br>T. ELLIOTT,<br><br>    Defendant. | No. 2:14-cv-1795 JAM AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

Plaintiff Joseph Lee Glosson is a state prisoner, currently incarcerated at Wasco State Prison, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds in forma pauperis and without counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on the original complaint on plaintiff's Eighth Amendment claim that defendant Correctional Officer T. Elliott was deliberately indifferent to plaintiff's serious mental health needs by failing to expedite his referral to mental health professionals on October 10, 2013. See ECF No. 1.

Presently pending is defendant's motion for summary judgment.[1] See ECF No. 20. These matters are referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §

---

[1] For the reasons set forth below, the court grants in part defendant's motion to strike plaintiff's motion for summary judgment.

1

1  636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, this court recommends that
2  defendant's motion for summary judgment be denied.

3        II.       Background

4        In his complaint filed July 22, 2014,[2] plaintiff alleges that, on October 10, 2013, defendant
5  Elliot failed to adequately respond to plaintiff's requests for urgent mental health care when he
6  told Elliot that he was "hearing voices disturbing him mentally."  ECF No. 1 at 5.  Plaintiff
7  alleges that, due to defendant's failure to immediately refer plaintiff to mental health services,
8  plaintiff engaged in a physical altercation with his cellmate the next morning.  The incident was
9  terminated when both inmates were pepper sprayed.  Plaintiff was taken to the primary care clinic
10 for treatment of lacerations, then taken to "the crisis bed for further evaluation for eleven (11)
11 days.  After being discharged from the clinic he was sent to administrative segregation."  Id. at 6.
12       Plaintiff contends that defendant Elliot violated his Eighth and Fourteenth Amendment
13 rights[3] "by being deliberately indifferent to his serious mental health need.  After defendant was
14 made aware that Plaintiff was experiencing suicidal and homicidal mental mentation, she had a
15 duty to respond reasonably.  Her failure to do so caused Plaintiff injury, and put him at a
16 substantial risk of serious harm."  Id. at 7 (citations omitted).

17       III.      Preliminary Matters
18              A.       Plaintiff's Motion to Compel Discovery

19       Plaintiff seeks an order of this court compelling defendant to "turn over the requested
20 documents (1) medical practices and procedures on admission, and (2) the names for the health
21 care provider and insurance company."  ECF No. 26 at 1.  Plaintiff avers that he "submitted a
22 written request for these documents months ago between April and or May 2015."  Id.  Plaintiff
23 also seeks monetary sanctions pursuant to Federal Rule of Civil Procedure 37.

---

[2] Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

[3] The rights accorded by the Eighth Amendment to the United States Constitution apply to the states pursuant to the Due Process Clause of the Fourteenth Amendment.

Defendant opposes the motion on the following grounds, ECF No. 27 at 2:

> Plaintiff's motion does not include the discovery requests at issue, Defendant's response, or any discussion of why Defendant's objections to this discovery were unjustified. Furthermore, after a review of Plaintiff's discovery requests to Defendant, it does not appear that Plaintiff has ever propounded [this] discovery[.]

Defendant also opposes the motion on the ground that plaintiff has failed to explain the untimeliness of his request. Defendant accurately recounts, id. at 1-2:

> Plaintiff filed two requests for extensions of time to oppose Defendant's motion for summary judgment. The second of these requests alleged that Defendant had failed to respond to Plaintiff's discovery and asked for an additional thirty days for discovery in addition to sixty additional days to oppose Defendant's motion. (ECF No. 24.)
>
> On November 4, 2015, this Court granted Plaintiff's extension of time to file an opposition [] but[,] rather than re-open discovery, it permitted Plaintiff 21 days to file a[] . . . motion to compel production of discovery [warning Plaintiff that] . . . the motion may be denied if he did not "provide a sufficient justification as to why, with the exercise of due diligence, he was not able to file the motion prior to the June 26, 2015 [discovery] deadline." (ECF No. 25 at 2.) Plaintiff was also reminded that he was to specify what discovery requests were at issue, how Defendant responded, and why Defendant's objections were unjustified. Id.

For the accurate and persuasive reasons offered by defendant, plaintiff's motion to compel discovery and for sanctions, ECF No. 26, is denied.

    B.  <u>Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment</u>

In response to defendant's motion for summary judgment filed September 2, 2015, ECF No. 20, plaintiff, on February 25, 2016 (after several authorized extensions of time), filed both an opposition to defendant's motion, ECF No. 31, and a cross-motion for summary judgment, ECF No. 30.

Defendant moves to strike plaintiff's cross-motion for summary judgment on the ground that it was filed beyond the date set by this court for filing dispositive motions in this action. See ECF No. 33; see also ECF No. 16 (Discovery and Scheduling Order, setting September 18, 2015 as the deadline for filing dispositive motions). Plaintiff has filed a reply wherein he contends that his motion is timely under Federal Rule of Civil Procedure 56(a). However, plaintiff relies on the 2008 version of Rule 56(a), which provided in pertinent part:

>(a) A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after:
>
>>(1) 20 days have passed from commencement of the action; or
>>
>>(2) the opposing party serves a motion for summary judgment.

In 2009, this language was eliminated, as was the option of filing a motion for summary judgment in response to a motion for summary judgment. Therefore, defendant is correct that plaintiff's motion for summary judgment was untimely filed under the current Federal Rules of Civil Procedure and this court's Discovery and Scheduling Order,.

Accordingly, defendant's motion to strike, ECF No. 33, will be granted in part. Because this court must liberally construe pro se pleadings, the arguments and evidence submitted in support of plaintiff's putative motion for summary judgment, ECF No. 30, will be considered in tandem with, and as part of, plaintiff's opposition to defendant's motion for summary judgment, ECF No. 31.

The court next considers the substance of defendant's motion for summary judgment.

IV.   Legal Standards

   A.   Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[4]

---

[4] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

1      The opposing party must demonstrate that the fact in contention is material, i.e., a fact that
2  might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,
3  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809
4  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a
5  reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,
6  Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
7      In the endeavor to establish the existence of a factual dispute, the opposing party need not
8  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
9  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12 Matsushita, 475 U .S. at 587 (citations omitted).
13     In evaluating the evidence to determine whether there is a genuine issue of fact," the court
14 draws "all reasonable inferences supported by the evidence in favor of the non-moving party."
15 Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).
16 It is the opposing party's obligation to produce a factual predicate from which the inference may
17 be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
18 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
19 party "must do more than simply show that there is some metaphysical doubt as to the material
20 facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the
21 nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation
22 omitted).
23     In applying these rules, district courts must "construe liberally motion papers and
24 pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."
25 Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly
26 support an assertion of fact or fails to properly address another party's assertion of fact, as
27 required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion
28 . . . ."  Fed. R. Civ. P. 56(e)(2).

1          B.      Legal Standards for Deliberate Indifference/Failure to Protect

2          "[D]eliberate indifference to serious medical needs of prisoners constitutes the

3   unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true

4   whether the indifference is manifested by prison doctors in their response to the prisoner's needs

5   or by prison guards in intentionally denying or delaying access to medical care or intentionally

6   interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)

7   (internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately

8   indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere

9   with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting

10  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

11         "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the

12  plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's

13  condition could result in further significant injury or the unnecessary and wanton infliction of

14  pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

15  indifferent.  This second prong ... is satisfied by showing (a) a purposeful act or failure to respond

16  to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett v.

17  Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks

18  omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR,

19  726 F.3d 1062, 1081 (9th Cir. 2013).

20         To state a claim for deliberate indifference to serious medical needs, a prisoner must

21  allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or

22  safety; the official must both be aware of the facts from which the inference could be drawn that a

23  substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan,

24  511 U.S. 825, 837 (1994).

25         More narrowly, a "failure to protect" claim under the Eighth Amendment requires a

26  showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety."

27  Farmer, 511 U.S. at 837.  Under an Eighth Amendment failure to protect claim, "[w]hether a

28  prison official had the requisite knowledge of a substantial risk is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citations omitted).  The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner.  Id. at 832–33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998).  Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted).

### V. Undisputed Material Facts

The following facts are undisputed by the parties or, following the court's review of the evidence,[5] are deemed undisputed for purposes of the pending motion.  Pertinent allegations are also noted.

- At all times relevant to this action, plaintiff was an inmate housed at California State Prison-Solano (CSP-SOL), in Vacaville, California, and was a mental health patient under the care of CSP-SOL's Correctional Clinical Case Management System (CCCMS).

- At all times relevant to his action, defendant T. Elliot was a correctional officer at CSP-SOL.

- Plaintiff describes himself as "a long time paranoid schizophrenic." ECF No. 1 at 5; see also Pltf. Depo. at 14:12-7.  Plaintiff testified that he received this diagnosis "17 or 18 years ago," and has been prescribed Geodon for "the last ten years."  Pltf. Depo. at 14:17, 22-3.  However, plaintiff testified that he continues to hear voices, which vary depending on his stress

---

[5] The court has reviewed Defendant's Statement of Undisputed Facts (ECF No. 20-3), including the declaration of defendants' counsel, Assistant California Attorney General Lucas L. Hennes and supporting exhibits (ECF No. 20-4); Plaintiff's verified Complaint (ECF No. 1); Plaintiff's Declaration (ECF No. 30 at 8-11); Plaintiff's Statement of Genuine Disputed Facts (ECF No. 30 at 12-7); Plaintiff's Statement of Uncontroverted Facts and supporting exhibits (ECF No. 30 at 18-108); plaintiff's sworn deposition testimony (ECF No. 21); and Defendant's Response to Plaintiff's Statement of Disputed Facts (ECF No. 32-1).  Notably, the record does not include a declaration by defendant Elliot.

1  level. Id. at 15:3-10. Plaintiff has twice attempted suicide, id. at 16:4-13. Plaintiff testified that

2  he's now "in a single man cell because of the cell fights I have been having regarding my voices,

3  my paranoia." Id. at 15:8-10.

4  • On October 1, 2013, plaintiff submitted a Health Care Services Request (HCSR)

5  Form, wherein he stated, "Dr. Kelly. I need to talk to you. I'm hearing the voices in my head

6  again." ECF No. 1 at 11. Plaintiff was interviewed that day by the triage nurse and referred, on a

7  "routine" basis, to Licensed Clinical Social Worker (LCSW) P. Fleishman.

8  • On October 4, 2013, plaintiff was seen by LCSW Fleishman, who noted in

9  pertinent part, ECF No. 1 at 13:

> [Plaintiff] came to meet with PC [Primary Care physician] after putting in a request. He reports that he is experiencing "constant and increasing voices!" Says he saw the psychiatrist who referred him back to the PC. He thinks he needs a re-assessment of his medications. Says that his dosage of meds was reduced and "I've had only problems since!"
>
> . . . Denies current s/i [suicidal ideation] but a/h [auditory hallucinations] are increasing and warning him about others – include his cellmate. Says that his loss of sleep is causing problems with his cellie because he is up all night. He also reports increased paranoia.
>
> He is being referred by [] his psychiatrist for a re-assessment of his medications. He will put in a request to see PC if needed – otherwise will be seen again in 90 days.

19  • Plaintiff's meeting with his psychiatrist, prior to his October 4, 2013 meeting with

20  LCSW Fleishman, was apparently facilitated by defendant Elliot. Plaintiff testified that, on

21  October 10, 2013, he "was explaining to Ms. Elliot about my situation prior the week before

22  where she had sent me over to see my psychiatrist about the voices I was experiencing[.]" Pltf.

23  Depo. at 24:1-4.

24  • At approximately 10:00 a.m., on October 10, 2013, plaintiff informed defendant

25  Elliot that he again needed to see his psychiatrist. Plaintiff testified in part, Pltf. Depo. at 24:1-

26  25:3:

> I was explaining to [defendant] that I talked to the psychiatrist and she was telling me if I wasn't feeling better to come back, to let the

9

floor officers, somebody know so that they could send me back over there.

So at that time [defendant] said yeah, I remember. She said fill out a 22 form and I will sign it for you to put it in the mailbox and get up there. I explained to her this is urgent. I need to see her right now. So her thing was like well, just fill out the 22 form, they will call you within a couple of days. I said I'm feeling suicidal and homicidal right now so I need to get over there. . . . . [S]he said get out the 22 form because she couldn't send me over there right now unless it was urgent right then, you know. So after that is when I filled out the 22 form.

- Plaintiff wrote on the Form 22, ECF No. 1 at 15 (sic):

  I keep having trouble sleeping for the pass week. The spirits and the voices keep trying to control my thoughts and action. I keep having suicide and homicid thoughts for the pass 3 weeks and I've keep trying to [illegible] will help me.

- Defendant signed plaintiff's Form 22 on the same day and sent it via mail to Dr. Kelly. Id.

- On October 11, 2013, plaintiff and his cellmate had a physical altercation in their cell that ended when they were pepper sprayed. Plaintiff testified, Pltf. Depo. at 28:15-29:7:

  So he and I was arguing earlier that day, you know. So when he came back in the cell we settled down, you know, and the voices just was telling me, man, do something, I was paranoid that he was going to do something to me because we hadn't been getting along. Earlier that day we had a dispute, you know man. So I attacked him, because I thought he was going to attack me. I thought he was going to try to hurt me or kill me so I figured I was going to do him first. . . . [We were arguing over] [j]ust miscellaneous stuff. You know over the weeks, days, little things build up . . . Like I said I can't sleep at night so I get up and I have got the light on and, you know, it kind of like built up[.]

- As a result of the physical altercation with his cellmate, plaintiff suffered a cut over his right eyebrow. Plaintiff also had cuts on both forearms. ECF No. 1 at 22; Pltf. Depo. at 32:9-25.

- Following the altercation and plaintiff's examination at the primary care clinic, he was moved to the crisis unit for 11 days, then sent to administrative segregation. ECF No. 1 at 6.

////

////

- The clinician who conducted a subsequent mental health assessment of plaintiff found that his "reaction seems to have been consistent with his mental health condition." ECF No. 1 at 24.

- As a result of the October 11, 2013 incident, both inmates received a Rules Violation Report (RVR). ECF No. 1 at 7, 17-22. At his disciplinary hearing, plaintiff pled as follows, id. at 18:

> I'm guilty of the RVR, but they were supposed to raise my medication because I had been up for about 4-5 days and was hearing voices. I attacked my cellie, it was on me, not him. I just needed some help and after that I spent eleven days in CIC.

VI. Analysis

Defendant characterizes plaintiff's allegations as a "failure to protect" claim, and argues as follows:

> Essentially, Plaintiff has sued Defendant on a failure-to-protect theory for failing to stop him from attacking another inmate without provocation. [¶] Defendant now moves for summary judgment on two grounds. First, there is no dispute that Defendant was not deliberately indifferent to a possible risk to Plaintiff because she clearly did not believe that any such risk existed. Second, Plaintiff's unprovoked assault on his own cellmate should not give rise to a failure-to-protect claim because all risk of injury to Plaintiff came as a result of Plaintiff's own choice to attack his cellmate, and it would be unreasonable and unjust to award Plaintiff monetary damages for attacking another inmate. . . . Because Plaintiff suffered no serious injury and it was the result of his own actions, the Court should enter judgment for Defendant.

ECF No. 20-1 at 1-2, 6.

Plaintiff responds in part that CDCR regulations and procedures, including an "Operational Procedure for Suicide Prevention," together with plaintiff's status as a CCCMS inmate and direct request to defendant Elliot that he obtain immediate mental health care, rendered it mandatory that defendant promptly obtain such care for plaintiff. See ECF No. 31 at 2, 4-9, 13-5; see also Plaintiff's Declaration (ECF No. 30 at 8-11); Plaintiff's Statement of Genuine Disputed Facts (ECF No. 30 at 12-7); and Plaintiff's Statement of Uncontroverted Facts and supporting exhibits (ECF No. 30 at 18-23).

////

11

However, plaintiff's "strict liability" argument does not support his civil rights claim. The alleged failure of prison officials to follow state prison regulations or procedures does not establish a federal civil rights violation under 42 U.S.C. § 1983. See Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."); Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law.") (citing Sweaney at 1391).

Plaintiff further contends that "[t]his case is not about a failure to protect theory as argued by Defendant. . . . Nor is it about an unprovoked assault by one [] mental-health-inmate against another as Defendant argues. . . . This case is about Defendant . . . being deliberately indifferent to Plaintiff's serious Mental Health Medical needs[.]" ECF No. 31 at 7-8 (citations omitted). Plaintiff asserts that the evidence supports a finding that defendant Elliot was subjectively aware of plaintiff's urgent need for mental health care, and of the risks associated with failing to assist plaintiff in obtaining immediate care, but nevertheless ignored those risks.

The court agrees that defendant's characterization of plaintiff's allegations as a "failure to protect" claim is too narrow. Plaintiff's allegations are not limited to defendant's failure to prevent plaintiff from attacking his cellmate. This incident was but one of many possible consequences that may have resulted from plaintiff's denial of immediate mental health care. While this incident and plaintiff's resulting injuries and RVR might frame the contours of plaintiff's damages on the deliberate indifference claim, they do not define the claim itself.

Thus, construing plaintiff's allegations as a deliberate indifference claim, the court finds that it is undisputed that plaintiff's mental health condition presents a serious medical need.

The next inquiry is whether the evidence presents a material factual dispute concerning defendant's state of mind. Whether defendant had the requisite knowledge of a substantial risk of harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus

1   prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot
2   escape liability by virtue of their having turned a blind eye to facts or inferences strongly
3   suspected to be true . . . ." Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing
4   Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

5   When the risk is not obvious, the requisite knowledge may still be inferred by evidence
6   showing that the defendant refused to verify underlying facts or declined to confirm inferences
7   that he strongly suspected to be true. Farmer, 511 U.S. at 842. On the other hand, prisons
8   officials may avoid liability by demonstrating "that they did not know of the underlying facts
9   indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or
10  that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts
11  gave rise was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by
12  presenting evidence that defendant lacked knowledge of the risk and/or that her response was
13  reasonable in light of all the circumstances. Id. at 844-45; see also Wilson, 501 U.S. at 298;
14  Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

15  Defendant contends that "[s]ubjectively, [she] did not believe that Plaintiff was at risk of
16  imminent harm." ECF No. 20-1 at 5. Defendant argues, id.:

> Plaintiff has admitted under oath that Defendant appeared not to believe him when he stated that he was feeling "suicidal and homicidal." ([Pltf. Depo.] at 40:16-19.) This is even more understandable in the context of the conversation, where Defendant had told Plaintiff that he could only go to the psychiatrist immediately if it were urgent. Initially, Plaintiff had told Defendant that he needed to see his psychiatrist because he wasn't feeling better. Only then did Plaintiff change his story, telling Defendant that he was feeling "suicidal and homicidal right now" and wanted to see the psychiatrist immediately. ([Pltf. Depo.] at 25:1-16.)

23  The remainder of defendant's argument is as follows, ECF No. 32 at 3:

> Despite Plaintiff's claims to the contrary in his opposition, he admitted in his deposition that he didn't think Defendant believed him. ([Pltf. Depo.] at 40:16-19.) To the extent that Plaintiff now argues that Defendant should have believed him because of CDCR's mental health regulations, his arguments are irrelevant to the question of deliberate indifference.

28  Plaintiff strenuously disagrees with defendant's assessment of the evidence, and directs

13

1  the court to the following excerpt from his own deposition testimony which he asserts

2  demonstrates that "Plaintiff did not admit under oath that Defendant appeared not to believe him

3  as argued by the Defendant," ECF No. 31 at 10-1. Plaintiff recounts his pertinent testimony in

4  full, as follows, Pltf. Depo. 25:1-25:

> Yeah, I recall. I was explaining to Ms. Elliot about my situation prior the week before where she had sent me over to see my psychiatrist about the voices I was experiencing, and I was explaining to her that I talked to the psychiatrist and she was telling me if I wasn't feeling better to come back, to let the floor officers, somebody know so they could send me back over there.
>
> So at the time she said yeah, I remember. She said fill out a 22 form and I will sign it for you to put in the mailbox and get up there. I explained to her this is urgent. I need to see her right now. So her thing was like well, just fill out the 22 form, they will call you within a couple of days. I said I'm feeling suicidal and homicidal right now so I need to get over there. So she was saying just be careful, just don't do it on my watch, whatever you do, you know what I mean. So at the time she had a joking manner – I know that she couldn't have thought that I was joking for the fact that she had just sent me over the prior week. So she knew what the situation was, you know what I mean. But like I said she was laughing. She was a joking person, you know what I mean. She couldn't have been taking it as a joke because she knew what my prior situation was the week prior to this.

16  Plaintiff's testimony does not support defendant's representation that plaintiff "admitted

17  in his deposition that he didn't think Defendant believed him." ECF No. 32 at 3. Rather,

18  plaintiff's testimony demonstrates a material factual dispute whether defendant subjectively

19  believed that plaintiff had an urgent and serious mental health need requiring an immediate

20  referral. Defendant's joking manner, together with her refusal to make an immediate referral,

21  despite her urgent referral of plaintiff a few days before, may reasonably be construed as

22  malicious, i.e. deliberately indifferent. This inference is underscored by the fact that defendant

23  signed and mailed plaintiff's Form 22, which expressly stated that he had suicidal and homicidal

24  thoughts for the past three weeks, trouble sleeping the past week, and that the "spirits and the

25  voices keep trying to control my thoughts and action." ECF No. 1 at 15. The failure of defendant

26  to file a declaration in this case underscores the plausibility of this competing construction.

27  Because the record demonstrates a material factual dispute concerning defendant's state of

28  mind during the subject incident, this question cannot be decided on summary judgment.

Whether defendant knew that the subject circumstances presented a substantial risk of harm to plaintiff is a question of fact that must be resolved at trial. Farmer, 511 U.S. at 837.

Additionally, for present purposes, the court further finds that plaintiff's physical and emotional injuries, crisis unit placement, RVR and resulting administrative segregation, demonstrate "harm" to plaintiff as a result of defendant's alleged deliberate indifference. Jett, 439 F.3d at 1096. Defendant's arguments to the contrary are inapposite. See ECF No. 20-1 at 6.

For these reasons, the court finds that plaintiff has demonstrated a material factual dispute concerning whether defendant Elliot's response to plaintiff's requests for immediate mental health care on October 10, 2013, constituted deliberate indifference to plaintiff's serious mental health needs in violation of the Eighth Amendment. Accordingly, this court recommends that defendant's motion for summary judgment be denied.

VII.   Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel discovery (ECF No. 26) is denied.

2. Defendant's motion to strike (ECF No. 33) plaintiff's motion for summary judgment is granted in part; the Clerk of Court is directed to strike the caption from the designated filing, see ECF No. 30, but note on the docket that this court has considered the arguments and evidence therein as part of, and in tandem with, plaintiff's opposition to defendant's motion for summary judgment, see ECF No. 31.

IT IS FURTHER RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 20) be denied; and

2. This action proceed on plaintiff's deliberate indifference claim against defendant Elliot, as set forth in the operative original complaint, ECF No. 1.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Due to exigencies in the**

**court's calendar, no extensions of time will be granted.** The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 2, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE